**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMRO ELANSARI,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-CV-0141** |
| | : | |
| **THE COMMONWEALTH OF** | : | |
| **PENNSYLVANIA,** | : | |
| **Defendant.** | : | |

**MEMORANDUM**

**SLOMSKY, J.**                                        **JANUARY 28, 2021**

Petitioner Amro Elansari filed this *pro se* civil action against the Commonwealth of

Pennsylvania pursuant to 42 U.S.C. § 1983 seeking to require the Commonwealth to

decriminalize growing marijuana and to expunge criminal records of those, including himself,

who have been convicted of marijuana-related crimes.  He seeks leave to proceed *in forma*

*pauperis*.  The Court will grant Elansari leave to proceed *in forma pauperis*, dismiss his

Complaint as legally frivolous, and direct him to show cause as to why he should not be subject

to a prefiling injunction because of his pattern of abusing the courts by filing frivolous litigation.

I.      **BACKGROUND**[1]

    A.  Litigation History

Elansari was a law student at Penn State Law until he was suspended from the school in

2015 for selling marijuana out of his apartment, first for two years, and then indefinitely.  *See*

*Elansari v. United States*, 823 F. App'x 107, 112 (3d Cir. 2020) (per curiam); *see also Elansari*

---

[1] The following facts are taken from public dockets and Elansari's Complaint.

1

*v. Commonwealth*, Civ. A. No. 18-1123 (M.D. Pa. May 11, 2020 Report and Recommendation, adopted by June 2, 2020 Order).  Also in 2015, Elansari was arrested for and convicted of various marijuana-related offenses in Pennsylvania.  *See Commonwealth v. Elansari*, CP-14-CR-0000408-2015 (C.P. Centre).  It appears his probation was revoked in 2017, apparently as a result of a conviction on new drug charges, and a new sentence was imposed.  *Id.*; *see also Commonwealth v. Elansari*, CP-14-CR-0001625-2016 (C.P. Centre).

In 2018, Elansari began filing a series of baseless lawsuits in this district, all of which were dismissed.  He has filed nineteen lawsuits in less than two and a half years.[2]  In all but one lawsuit, which was dismissed for failure to prosecute, *Elansari v. Golf Club Apartments*, Civ. A. No. 18-4171 (E.D. Pa.), Elansari sought and was granted leave to proceed *in forma pauperis* and his claims were dismissed upon screening.  The Court will review those filings here as evidence of Elansari's filing behavior in this Court.

On February 25, 2019, Elansari filed two lawsuits.  In one lawsuit, Elansari sued the University of Pennsylvania, a professor, and a provider of cell phone charging stations because, to retrieve his cell phone from a free phone charging station he used at the Exton Mall, he was required to complete a University of Pennsylvania survey on consumer psychology, which he believed violated federal regulations and principles of informed consent.  *See Elansari v. Univ. of Pa.*, Civ. A. No. 19-786 (E.D. Pa. ECF No. 2.)  Judge Diamond, who was assigned to the case, granted Elansari leave to proceed *in forma pauperis* and, after giving him leave to amend, dismissed his federal claims as implausible and his state claims for lack of subject matter

---

[2] This figure does not include a petition for a writ of habeas corpus that Elansari filed, which was transferred to the United States District Court for the Middle District of Pennsylvania because it challenged his convictions from Centre County.  *See Elansari v. Commonwealth of Pa.*, Civ. A. No. 18-2161 (E.D. Pa.).

jurisdiction.  The United States Court of Appeals for the Third Circuit affirmed the dismissal.

*See Elansari v. Univ. of Pennsylvania*, 779 F. App'x 1006, 1009 (3d Cir. 2019), *cert. denied*, 140

S. Ct. 837 (2020).   In the second lawsuit, Elansari sued Judge Savage for violating his rights by

dismissing Elansari's prior case, Civil Action Number 18-4171.  *Elansari v. Savage*, Civ. A. No.

19-787 (E.D. Pa.).   Elansari was granted leave to proceed *in forma pauperis* and his claims were

dismissed as barred by absolute judicial immunity; his appeal was dismissed for failure to pay

the fees as directed.  *Id.* (ECF Nos. 4, 5 & 8.)

On July 10, 2019, Elansari filed his next group of lawsuits.  He filed a putative class

action against Tinder, Inc., the dating application, for allegedly sending users false notification of

dating interest, which lawsuit was dismissed because Elansari could not pursue claims on behalf

of others and because the Court lacked jurisdiction over his individual fraud claims.  *See*

*Elansari v. Tinder, Inc.*, Civ. A. No. 19-3003, 2019 WL 3244589, at *1 (E.D. Pa. July 18, 2019).

The Third Circuit affirmed the dismissal of these claims.  *Elansari v. Tinder*, 784 F. App'x 114,

116 (3d Cir. 2019) (per curiam).  The second lawsuit of this group alleged that the Pennsylvania

State System of Higher Education and two of its attorneys infringed on a patent Elansari claimed

to have held (but never identified) on software to prevent cheating, and was dismissed as legally

frivolous after Elansari was given leave to amend.  *See Elansari v. Passhe*, Civ. A. No. 19-3005,

2019 WL 4034692, at *3 (E.D. Pa. Aug. 26, 2019).  The Third Circuit concluded it lacked

jurisdiction over Elansari's appeal and declined to transfer his appeal to the Court of Appeals for

the Federal Circuit.  *Elansari v. Passhe*, No. 19-3020 (3d Cir. Mar. 16, 2020 Order).  Elansari's

third lawsuit in this group of cases, brought against a video gaming company for violating his

constitutional rights by "muting" him from playing a video game, was also dismissed.  *See*

*Elansari v. Jagex Inc.*, Civ. A. No. 19-3006, 2019 WL 3202195, at *2 (E.D. Pa. July 15, 2019).

That dismissal was affirmed on appeal over Elansari's argument that Judge Kearney, who dismissed the complaint, failed to construe his complaint as raising a claim under Title II of the Civil Rights Act of 1964. *Elansari v. Jagex, Inc.*, 790 F. App'x 488, 490 (3d Cir. 2020) (per curiam).

Less than a month after filing that group of three cases, Elansari filed two more. One of those lawsuits brought claims against tobacco companies for selling cigarettes that led to Elansari, an admitted marijuana smoker, to breathe second-hand smoke, and was dismissed for failure to state a claim or a legally cognizable injury. *Elansari v. Altria*, Civ. A. No. 19-3415, 2019 WL 3562652, at *2 (E.D. Pa. Aug. 2, 2019). The Third Circuit affirmed that dismissal. *Elansari v. Altria*, 799 F. App'x 107 (3d Cir. 2020) (per curiam). The second lawsuit brought constitutional claims against the United States Marine Corps and the President Judge of the Centre County Court of Common Pleas based on Elansari's allegations that the judge failed to terminate his probation early, preventing him from signing up for the Marine Corp. Elansari's claims against the judge were dismissed as barred by absolute judicial immunity and his claims against the Marine Corps were dismissed as legally baseless. *See Elansari v. Ruest*, Civ. A. No. 19-3609, 2019 WL 3936358, at *2 (E.D. Pa. Aug. 19, 2019). The Third Circuit affirmed that dismissal too. *Elansari v. Ruest*, 796 F. App'x 763, 764 (3d Cir. 2020) (per curiam).

On December 31, 2019, Elansari filed two more cases. One of those cases raised constitutional claims against the Philadelphia Municipal Court and two Municipal Court Judges based on their "enforc[ement of] the rules of state court while addressing his cases in Philadelphia Court, and on a case where he seemingly represents other persons." *Elansari v. Philadelphia Mun. Court*, Civ. A. No. 19-6197, 2020 WL 61264, at *1 (E.D. Pa. Jan. 6, 2020) (footnote omitted). These claims were dismissed as legally frivolous because the judges were

4

entitled to absolute judicial immunity, the state court was immune, and Elansari had not pled a basis for a constitutional claim; the dismissal was summarily affirmed on appeal. *Id.* at *2; *Elansari v. Phila. Municipal Ct.*, 816 F. App'x 628, 629-30 (3d Cir. 2020) (per curiam). Elansari's complaint in the second lawsuit purported to raise claims under criminal law and § 1983 against local police, Paypal, and an individual located in Oregon, based on allegations that the Oregonian whom he hired to develop an internet-based video game swindled him and the police did not pursue criminal charges. That case was dismissed as legally frivolous — and summarily affirmed on appeal — because criminal statutes did not give rise to civil liability and law enforcement's alleged failure to investigate and prosecute others did not give rise to a constitutional claim.[3] *See Elansari v. Ramirez*, Civ. A. No. 19-6198, 2020 WL 85967, at *3 (E.D. Pa. Jan. 6, 2020), *aff'd,* 816 F. App'x 630 (3d Cir. 2020) (per curiam).

Elansari filed his next frivolous lawsuit less than a month later. In that lawsuit, his tenth in this Court, Elansari renewed his claims against the video game company that allegedly muted him, this time expressly raising claims under Title II of the Civil Rights Act of 1964 following the Third Circuit's conclusion that these claims were not pursued in the earlier lawsuit. He filed the complaint two days after the Third Circuit rejected his appeal. Judge Kearney dismissed the case as legally frivolous because it was barred by claim preclusion and, in any event, because Elansari failed to state a claim. *See Elansari v. Jagex Inc.*, Civ. A. No. 20-423, 2020 WL 704861, at *2 (E.D. Pa. Feb. 11, 2020). Elansari's appeal was dismissed when he failed to pay the fees as directed. *Elansari v. Jagex, Inc.*, No. 20-1358 (3d Cir. Oct. 8, 2020 Order).

---

[3] Following the resolution of that appeal, and despite being informed of the flaws in his claims, Elansari initiated a similar suit in state court against different law enforcement officials, which was removed to this Court and remains pending. *See Elansari v. Ramirez*, Civ. A. No. 20-896 (E.D. Pa.).

In the meantime, a week after Judge Kearney dismissed his case, Elansari filed a new case, this time suing Judge Kearney, alleging constitutional violations based on the Judge's legal rulings.  That case was dismissed as legally frivolous and Elansari was informed, as he was in certain of his prior cases, that absolute judicial immunity precludes constitutional claims against judges based on their judicial decisions.  *See Elansari v. Kearney*, Civ. A. No. 20-0914, 2020 WL 887917, at *2-*3 (E.D. Pa. Feb. 24, 2020).  Elansari's appeal of that order was dismissed when he failed to pay the fees to proceed as directed.  *Elansari v. Kearney*, No. 20-1476, 2020 WL 5240433 (3d Cir. Apr. 3, 2020)

Elansari filed his next lawsuit in July 2020.  In that case, he sought a writ of mandamus to compel the Federal Bureau of Investigation, the Department of Justice, and the West Goshen Police Department to prosecute various individuals for Facebook posts that made him feel threatened.  Judge Quiñones dismissed the petition as legally frivolous because Elansari had not alleged a basis for mandamus relief.  *See Elansari v. Fed. Bureau of Investigation*, Civ. A. No. 20-3593, 2020 WL 4365604, at *2 (E.D. Pa. July 30, 2020).  Elansari filed a petition for reconsideration the day his case was dismissed, and Judge Quiñones denied that petition as well.

Four days later, Elansari filed two new lawsuits.  One of those lawsuits recharacterized the recently dismissed mandamus petition as a civil rights complaint, naming as defendants state, federal, and local law enforcement agencies and law enforcement officers for failing to prosecute the individuals responsible for the Facebook posts, as well as Judge Quiñones for dismissing his mandamus petition.  The case was dismissed as legally frivolous on various grounds, essentially all of which had been grounds for dismissal of Elansari's claims in prior lawsuits he had filed. *See Elansari v. Barr*, Civ. A. No. 20-4000, 2020 WL 4934333, at *3 (E.D. Pa. Aug. 24, 2020) ("A review of public records reflects that this is the fifteenth case [Elansari] filed in this Court in

a period of less than two years, and that several of Elansari's prior cases were dismissed for the same reasons his current case fails."). Accordingly, the Court also "place[d] Elansari on notice that filing baseless lawsuits [could] result in restriction of his filing privileges, including restrictions on his ability to file *in forma pauperis*." *Id.* The Court denied Elansari's subsequent requests for reconsideration.

The second lawsuit that Elansari filed the same day as his mandamus petition is particularly relevant here. It is the first of a group of cases that Elansari filed against the Commonwealth of Pennsylvania in which he claimed that the Commonwealth of Pennsylvania's adoption of a medical marijuana program violated his constitutional rights, both because he believes he should be entitled to grow marijuana and because the Commonwealth has prosecuted individuals, such as himself, for marijuana-related offenses. The Court dismissed the case, which was brought pursuant to § 1983, as legally frivolous because the Commonwealth was entitled to Eleventh Amendment immunity and was not a "person" for purposes of that statute. *Elansari v. Pennsylvania*, Civ. A. No. 20-CV-3895, 2020 WL 4735494, at *1 (E.D. Pa. Aug. 14, 2020). Four days later, Elansari filed a new lawsuit, which was dismissed as legally frivolous, recasting his claims as a mandamus petition seeking to compel the Commonwealth to legalize marijuana and expunge criminal records of individuals who have been convicted of marijuana-related crimes. *See Elansari v. Pennsylvania*, Civ. A. No. 20-4109, 2020 WL 5095446, at *3 (E.D. Pa. Aug. 28, 2020). The Court again placed Elansari "on notice that filing baseless lawsuits may result in restriction of his filing privileges, including restrictions on his ability to file *in forma pauperis*." *Id.*

On December 7, 2020, Elansari filed a new petition for a writ of mandamus against the Commonwealth to compel the Commonwealth to legalize marijuana and expunge marijuana-

related criminal records, apparently after he unsuccessfully pursued the claims in state court.  In

a memorandum dismissing the case as legally frivolous, the Court observed that the case was

"the seventeenth case Elansari has filed in this Court in just over two years, and the fifth legally

baseless case he has filed in approximately five months, three of which concerned identical

subject matter." *Elansari v. Pennsylvania*, Civ. A. No. 20-6189, 2020 WL 7319545, at *3 (E.D.

Pa. Dec. 11, 2020).  The Court nevertheless treated Elansari with leniency, observing that:

> It appears Elansari disregarded the portion of the Court's prior opinion explaining
> that he could not bring a mandamus petition against the Commonwealth and
> mistakenly concluded that he could reassert his claims after fully litigating them
> in the state courts. Giving Elansari the benefit of the doubt, the Court will not
> impose an injunction at this time.  However, he should be under no
> misapprehension that continuing to file repetitive, meritless claims in the future
> will result in the imposition of restrictions on his filing privileges.

*Id.*  Elansari then filed for reconsideration three times, and initiated the instant civil action

pursing the same claims, as discussed further below.  He also filed another new case on

December 22, 2020, in which he appears to claim that his constitutional rights were violated in

connection with enforcement of his probation in connection with changes in the law related to

medical marijuana.[4]  *See Elansari v. Ragazzo*, Civ. A. No. 20-6170 (E.D. Pa.).  That case is

pending, and the Court will address it separately.

## B.  The Instant Complaint

---

[4] In addition to the litigation in this Court, Elansari filed a lawsuit in the United States District
Court for the Middle District of Pennsylvania suing "various federal and state government
agencies, county courthouses, county courts, and Penn State Law seeking, among other things,
an injunction against these parties from enforcing any laws regulating or prohibiting the
possession, use, or distribution of marijuana." *Elansari v. United States*, 823 F. App'x 107, 109
(3d Cir. 2020) (per curiam).  In that case, the district court and Third Circuit rejected Elansari's
arguments that his equal protection rights were violated by the enforcement of laws criminalizing
marijuana possession and distribution, and also rejected constitutional claims based on Elansari's
suspension from law school.  *Id.* at 109-110.

Elansari filed his Complaint in the instant civil action against the Commonwealth of Pennsylvania, pursuant to 42 U.S.C. § 1983.  (ECF No. 2.)  He claims that the Commonwealth has violated the Equal Protection Clause of the United States Constitution by "(1) selling cannabis in violation of federal law while (2) simultaneously arresting and punishing people with criminal records for violating state law."  (*Id.* at 1.)  Elansari "demands expungement of all cannabis records within the state of Pennsylvania as well as a declaration on current restriction of growth unconstitutional" presumably so that he may grow his own marijuana.  (*Id.*)  Elansari initially sought damages, declaratory relief, and injunctive relief, (*id.* at 4), but subsequently withdrew his damages claims.  (ECF No. 5.)  Although he did not name any Commonwealth officials as Defendants, he believes that *Ex Parte Young*, 209 U.S. 123 (1908) permits his claims against the Commonwealth to proceed, (ECF No. 2 at 1; ECF No. 4), even though this argument was rejected in the context of one of his prior cases.  *See Elansari v. The Commonwealth of Pa.*, Civ. A. No. 20-6189 (E.D. Pa. Jan. 7, 2020 Order denying reconsideration).

## II.    STANDARD OF REVIEW

The Court grants Elansari leave to proceed *in forma pauperis* because it appears that he is not capable of pre-paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(i) requires the Court to dismiss the Petition if, among other things, it is frivolous. A pleading is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if "based on an indisputably meritless legal theory."  *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).  As Elansari is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

**A.  Elansari's Case is Legally Frivolous**

Elansari's case is legally frivolous for the same reason his prior civil rights cases against the Commonwealth were frivolous.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  The Eleventh Amendment bars suits against a state in federal court when the state has not waived that immunity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989).  The Commonwealth of Pennsylvania has not waived that immunity here. *See* 42 Pa. Cons. Stat. § 8521(b).  Additionally, the Commonwealth is not considered a "person" for purposes of § 1983.  *See Will*, 491 U.S. at 69.

Elansari nevertheless alleges that *Ex parte Young* permits him to proceed in this case on his claims for injunctive relief against the Commonwealth.  Under *Ex parte Young*, "suits seeking prospective, but not compensatory or other retrospective relief, may be brought against state officials in federal court challenging the constitutionality of official conduct enforcing state law." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). The doctrine "is narrow:  It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Id.* (internal quotations omitted).  "Consistent with this narrow construction of *Ex parte Young*, the doctrine does not apply when the state is the real, substantial party in interest." *Waterfront Comm'n of New York Harbor v. Governor of New Jersey*, 961 F.3d 234, 238 (3d Cir. 2020) (internal quotations omitted)).  Accordingly, if the effect of the relief sought "would operate

against the State, then we forego the fiction of *Ex parte Young* in favor of the bedrock principle of state sovereign immunity." *Id.* at 239.

*Ex Parte Young* does not apply here because Elansari has named the Commonwealth itself as the Defendant, rather than an official of the Commonwealth.  In any event, he seeks relief that would effectively operate against the Commonwealth by requiring it to legalize certain conduct it has deemed criminal and by forcing it to vacate certain convictions.  Accordingly, there is no legal basis for Elansari to proceed on his claims.

Elansari's claims also fail for other reasons.  First, Elansari lacks standing to pursue claims based on harm suffered by anyone other than himself, meaning he may not seek relief for others whom he perceives as victims of the same laws he challenges, *i.e.*, those convicted under laws criminalizing marijuana use and possession.  *See Twp. of Lyndhurst, N.J. v. Priceline.com Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim (quotations omitted)).  Second, to recover relief for allegedly unconstitutional conviction, "or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted).  Elansari's convictions have not been invalidated, so he may not pursue equal protection claims that would necessarily render those convictions invalid, as some of his claims in this case seek to do.  Third, Elansari has not articulated any legal basis for an equal protection claim.  *See Elansari v. United States*, 823 F. App'x 107, 111 (3d Cir. 2020) (per curiam) ("We agree with the District Court that

Elansari's claim fails under a traditional theory of equal protection because he has not shown that, as an individual who uses, possesses, or distributes marijuana, he is a member of a protected class.  We also agree with the District Court that Elansari's claim fails under a class-of-one theory as well because, despite ample opportunity, he has never adduced evidence nor made a credible allegation that he was irrationally and intentionally treated differently by Penn State Law, or any other Appellee, from any similarly situated individual.").

In sum, Elansari's repetitive Complaint is legally frivolous for numerous reasons and will be dismissed with prejudice.

**B.  Elansari Must Show Cause as to Why He Should not be Enjoined**

Because of Elansari's demonstrated pattern of filing frivolous cases in this Court, he will be directed to show cause as to why he should not be subject to a pre-filing injunction prohibiting him from proceeding *in forma pauperis* in future lawsuits, with limited exception. "When a district court is confronted with a pattern of conduct from which it can only conclude that a litigant is intentionally abusing the judicial process and will continue to do so unless restrained, . . . [the court] is entitled to resort to its power of injunction and contempt to protect its process." *See Abdul-Akbar v. Watson*, 901 F.2d 329, 333 (3d Cir. 1990).  The All Writs Act, 28 U.S.C. § 1651(a), provides a district court with the ability enjoin "abusive, groundless, and vexatious litigation." *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993); *see also In re Oliver*, 682 F.2d 443, 445 (3d Cir. 1982).  The Third Circuit has held that district courts "must comply with the following requirements when issuing such prohibitive injunctive orders against *pro se* litigants." *Brow*, 994 F.2d at 1038.  First, the Court should not restrict a litigant from filing claims "absent exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." *Id.*; *see also Matter of Packer Ave. Assoc.*,

884 F.2d 745, 747 (3d Cir. 1989).  Second, the Court "must give notice to the litigant to show

cause why the proposed injunctive relief should not issue."  *Brow*, 994 F.2d at 1038; *see also*

*Gagliardi v. McWilliams*, 834 F.2d 81, 83 (3d Cir. 1987).  Third, the scope of the injunctive

order "must be narrowly tailored to fit the particular circumstances of the case before the [ ]

Court."  *Brow*, 944 F.2d at 1038.

  As explained in detail above, Elansari has engaged in a pattern of litigation activity in the

Court that is vexatious.  He has filed nineteen civil cases in this Court in less than two and a half

years.  With the exception of one case that was dismissed for failure to prosecute, and one that

remains pending,[5] each of these cases was dismissed on § 1915 screening as legally frivolous or

for some other defect after Elansari was granted leave to proceed *in forma pauperis*.  None of his

appeals were successful either.

  Notably, Elansari's cases cannot be confined to a subject matter, defendant or type of

defendant, or cause of action.  He has sued local, state, and federal officials, large and small

companies ranging from video-game companies to tobacco companies, and private individuals

for numerous perceived harms.  Although several of his cases have targeted the

Commonwealth's marijuana-related laws, that is not always the case.  Indeed, it appears that

Elansari regularly files lawsuits about various social issues or perceived harms he encounters in

daily life based on what he thinks the law should be.  *See Elansari v. Commonwealth*, M.D. Pa.

Civ. A. No. 18-1123 (May 11, 2020 Report and Recommendation, adopted by June 2, 2020

Order) (observing that Elansari's filing activity reflects that he "has engaged in a pattern of

litigation intended to correct some subjective sense on his part that he has been terribly aggrieved

---

[5] Counsel entered his appearance for the Defendants in that case, although they have not yet been
served, and recently moved to dismiss.

by various entities throughout the state of Pennsylvania").  With each dismissal, Elansari has

continued to pursue baseless cases, often quickly filing a new lawsuit pursuing legal theories that

had previously been rejected in prior cases, or recasting the same claims under a new, but equally

meritless, legal theories.  For example, when his claims against the video game producer who

muted him failed under § 1983, he filed a new lawsuit claiming discrimination under Title II.

When his claims against the Commonwealth failed under § 1983, he filed a new lawsuit seeking

a writ of mandamus.  At times, Elansari has even named as defendants the judges who previously

dismissed his cases.  Numerous warnings to Elansari have also failed to deter his vexatious filing

activity.  He is perhaps best described as a recreational litigant.  *See Jones v. Warden of Stateville*

*Corr. Ctr.,* 918 F. Supp. 1142, 1153 (N.D. Ill. 1995) ("A recreational litigant is one who engages

in litigation as sport and files numerous complaints with little regard for substantive law or court

rules.").

   If there is one theme that best describes Elansari's abusive litigation activity it is an abuse

of the privilege of proceeding *in forma pauperis*.  He has filed numerous baseless lawsuits

without expense or consequence.  Although the Court has the ability to screen and dismiss

Elansari's frivolous filings under the screening provision of the *in forma pauperis* statute,

"[f]rivolous claims amount to a waste of judicial resources and divert attention from processing

good faith claims." *Brown v. City of Philadelphia*, Civ. A. No. 05-4160, 2009 WL 1011966, at

*14 (E.D. Pa. Apr. 14, 2009).  In the case of a continuous abuse of process, the ability to screen

cases for frivolity under § 1915 "alone is not an efficacious remedy." *Abdul-Akbar v. Watson*,

901 F.2d 329, 333 (3d Cir. 1990).  For these reasons, the Court will consider the appropriateness

of enjoining Elansari from filing new civil actions on an *in forma pauperis* basis subject to

limited exception.  Although the Court is mindful that any injunction must be narrowly tailored

to address the particular litigation conduct at hand, Elansari's litigation history reflects that an injunction limited by subject matter, defendant, or cause of action would be insufficient to prevent Elansari from abusing the Court's process by crafting his pleadings around the injunction or filing a new lawsuit based on a perceived societal harm.

The Third Circuit has not recently addressed in a precedential opinion the appropriateness of prefiling injunctions prospectively limiting a litigant's ability to proceed *in forma pauperis*. To understand Third Circuit jurisprudence in this area, one must first look to the decision of the United States Court of Appeals for the District of Columbia in *In re Green*, 669 F.2d 779 (D.C. Cir. 1981) (per curiam).  At issue in *Green* was the propriety of the district court's injunction against Clovis Carl Green, Jr., a demonstrated abusive prisoner-litigant who filed hundreds of cases on a *pro se* and *in forma pauperis* basis.  To address that abuse of process, the district court directed the Clerk of Court not to file any additional papers submitted by Green and then amended that order "to provide that Green would be permitted to file claims in the district court only upon payment of all filing fees plus a $100 cash deposit as security for costs."  *Id.* at 781.

The D.C. Circuit concluded that the injunction order violated Green's constitutional right of access to the courts based in part on the Supreme Court's decision in *Bounds v. Smith*, 430 U.S. 817 (1977), which at the time was relatively recent case law.[6]  669 F.2d at 785.  The D.C. Circuit also reasoned that the injunction impermissibly departed from the required case-by-case assessment of a litigant's financial eligibility for *in forma pauperis* status in a given case and the required case-by-case assessment of frivolity or maliciousness under the version of the *in forma pauperis* statute in effect at that time.  *Id.* at 785-86.  In recognition that district courts required

---

[6] *Bounds* led to a misunderstanding that inmates possessed an abstract limitless right to file with the courts, and was curtailed by the Supreme Court's subsequent decisions in *Lewis v. Casey*, 518 U.S. 343 (1996) and *Christopher v. Harbury*, 536 U.S. 403 (2002).

guidance as to an appropriate order to address such abusive litigation activity, the D.C. Circuit

approved of the following order, which it believed addressed its "constitutional and statutory

concerns":

> Petitioner may not file any civil action without leave of court.  In seeking leave of
> court, petitioner must certify that the claims he wishes to present are new claims
> never before raised and disposed of on the merits by any federal court.
>
> Upon a failure to certify or upon a false certification, petitioner may be found in
> contempt of court and punished accordingly.

*Id.* at 787.  The intended deterrent feature of this order was that the litigant's failure to certify

would subject him to penalty for contempt of court.  *Id.* at 788.

In two cases, one from 1989 and one from 1990, the Third Circuit explicitly endorsed the

approach taken by the D.C. Circuit in *Green*.  In *Matter of Packer Ave. Associates*, the district

court "enjoined [an abusive litigant who filed numerous matters related to a bankruptcy case]

from 'filing any further petitions, pleadings or any document whatsoever' except for a notice of

appeal in the present case."  884 F.2d 745, 746 (3d Cir. 1989).  The Third Circuit found that

order insufficiently narrowly-tailored, because it prohibited the litigant "from ever again filing a

document in federal court."  *Id.* at 748.  The Third Circuit therefore modified the injunction to

prohibit the litigant from filing new cases dealing with the same bankruptcy action without leave

of court and without certifying that he is pursuing new claims.  *Id.* at 749.  In doing so, the Third

Circuit took inspiration from *Green*, finding it to have set forth a "novel approach to the

problems occasioned by pro se litigants who persist in filing great numbers of frivolous

lawsuits."  *Id.* at 748.

In *Abdul-Akbar v. Watson*, the Third Circuit "once again endorse[d] the approach taken

in *In re Green* as striking an appropriate balance between an indigent citizen's interest in access

to the district court and the court's interest in being free from abusive tactics."  901 F.2d 329,

16

333 (3d Cir. 1990).  At issue in *Abdul-Akbar* was an injunction order issued by the district court that prohibited Abdul-Akbar, a litigious prisoner, from filing any lawsuits under § 1983 on an *in forma pauperis* basis, although he was not barred from proceeding *in forma pauperis* in other matters, so long as he did not abuse the privilege.  *Id.* at 331.  The Third Circuit concluded that this order improperly "barr[ed] Abdul-Akbar from filing *any in forma pauperis* § 1983 suits without considering the effects on a legitimate claim."  *Id.* at 331.  So, like the approach in *Green*, the Third Circuit required the district court to provide the litigant an option for seeking leave of court to pursue meritorious claims:

> when a district court concludes that a litigant has abused the judicial process by filing a multitude of frivolous § 1983 cases in a relatively brief period of time and will continue to file such cases unless restrained, we hold that the court may enter an injunction directing that the litigant not file any section 1983 claims without leave of court and that in seeking leave of court, the litigant certify (1) that the claims he wishes to present are new claims never before raised and disposed of on the merits by any federal courts, (2) that he believes the facts alleged in his complaint to be true, and (3) that he knows of no reason to believe his claims are foreclosed by controlling law. Such an injunction should state that upon a failure to certify or upon a false certification, the litigant may be found in contempt of court and punished accordingly.

*Id.* at 333.

Since *Abdul-Akbar*, the Third Circuit has not discussed in a precedential opinion the propriety of a prospective injunction limiting an abusive litigant's *in forma pauperis* privilege, but much has changed in the meantime.  Notably, in *Hurt v. Social Security Administration*, the D.C. Circuit enjoined an abusive litigant from proceeding *in forma pauperis* in future cases, observing that "[s]ubsequent Supreme Court cases suggest *Green* was wrong when it held section 1915(a) prohibited prospective denials of IFP status."  544 F.3d 308, 310 (D.C. Cir. 2008).  In particular, *Hurt* cited the Supreme Court's decision in *In re McDonald*, in which the Supreme Court directed the Clerk of Court "not to accept any further petitions [for certain

writs]" from an abusive litigant unless he paid the docketing fees and submitted his petition in compliance with court rules.  489 U.S. 180, 180 (1989) (per curiam).  The Supreme Court recognized in *McDonald*, that, although it granted the vast majority of *in forma pauperis* applications, revoking that privilege was appropriate when a litigant demonstrated abusive behavior, noting that:

> paupers filing *pro se* petitions are not subject to the financial considerations—
> filing fees and attorney's fees—that deter other litigants from filing frivolous
> petitions.  Every paper filed with the Clerk of this Court, no matter how
> repetitious or frivolous, requires some portion of the institution's limited
> resources.  A part of the Court's responsibility is to see that these resources are
> allocated in a way that promotes the interests of justice.  The continual processing
> of petitioner's frivolous requests for extraordinary writs does not promote that
> end.

*Id*, 489 U.S. at 184.  *Hurt* observed that the Supreme Court has since "regularly issued blanket prohibitions against granting IFP status for non-criminal petitions from abusive filers."  *Hurt*, 544 F.3d at 310.  Furthermore, the Prison Litigation Reform Act amended the *in forma pauperis* statute in 1996 to introduce 28 U.S.C. § 1915(g), commonly known as the "three strikes rule," which prohibits incarcerated litigants who previously filed three meritless cases from proceeding on an *in forma pauperis* basis unless they are in imminent danger of serious physical injury.  The D.C. Circuit reasoned that, "[i]f such a rule is appropriate for prisoners, who are severely limited in their ability to earn money to pay filing fees, surely it is permissible for similarly vexatious non-incarcerated litigants."  *Hurt*, 544 F.3d at 310.

*Hurt* and *McDonald* suggest that district courts have the flexibility to prospectively prohibit *in forma pauperis* filings in those limited situations presented by abusive litigants who have a demonstrated record of abusing the *in forma pauperis* privilege and for whom a narrower injunction would be insufficient to capture the problematic litigation behavior.  Although *McDonald* issued before *Matter of Packer Ave. Associates* and *Abdul-Akbar*, neither of those

opinions considered its impact on the approach articulated in *Green*.[7]  Furthermore, the Third

Circuit has acknowledged the common use by other courts of injunctions prospectively

prohibiting additional *in forma pauperis* filings[8] and has itself revoked the *in forma pauperis*

privilege for abusive filers.  *See In re Ross*, 858 F.3d 779, 787 (3d Cir. 2017) (observing that

"broad filing restrictions are common and often justified" in addressing abusive litigation and

citing cases prospectively limiting litigants from proceeding *pro se* and *in forma pauperis*);

*Aruanno v. Davis*, 679 F. App'x 213, 216 n.6 (3d Cir. 2017) (per curiam) (citing *McDonald* and

*Hurt* in declining to address "the propriety" of a "prospective restriction on [a litigant's] ability

to proceed IFP" while affirming district court's denial of *in forma pauperis* status on the basis

that the litigant was abusive); *In re: Witherspoon*, No. 15-8012 (3d Cir. Feb. 20, 2015 Order)

(after finding litigant's filings "show an especially abusive pattern aimed at taking advantage of

the in forma pauperis privilege," directing that the litigant's "in forma pauperis and electronic

filing privileges are hereby revoked" and that district court clerks should not docket any appeal

filed by the litigant unless accompanied by the filing fees).

---

[7] *McDonald* is quoted in *Abdul-Akbar*, but it's impact on *Green* was not discussed.

[8] Other courts have revoked the privilege of proceeding *in forma pauperis* from litigants who
have abused that privilege.  *See Maxberry v. S.E.C.*, 879 F.2d 222, 224 (6th Cir. 1989) (per
curiam) ("[W]e hereby direct the Clerk of this Court to refuse to accept any further filings from
Maxberry in which he seeks to proceed *in forma pauperis* on appeal from judgments dismissing
any of his civil suits.  Maxberry may proceed on appeal only if he submits the required docketing
fee . . . ."); *Riches v. Parcells*, Civ. A. No. 07-1891, 2008 WL 117887, at *2 (E.D. Cal. Jan. 10,
2008) ("The Clerk of the Court is RESTRICTED from filing any civil complaints of Jonathan
Lee Riches in this Court without payment of the full statutory filing fee.  The Clerk is directed to
REFUSE any complaint that is not accompanied by the fee at the time of its attempted filing.").
The Supreme Court has also extended *McDonald* to prohibit abusive litigants from proceeding *in
forma pauperis* in other contexts.  *See Martin v. D.C. Court of Appeals*, 506 U.S. 1, 3 (1992)
(extending to petitions for certiorari); *In re Sindram*, 498 U.S. 177, 180, 111 (1991) (when
abusive litigant filed baseless mandamus petition, finding it "appropriate to deny *in forma
pauperis* status to petitioner in this and all future petitions for extraordinary relief").

Furthermore, as *Hurt* correctly points out, if the Congressional limit on prisoner's access to *in forma pauperis* status is constitutional, it stands to reason that similar restrictions may be imposed on abusive non-prisoner litigants when warranted by their abuse of process.  Indeed, the Third Circuit has held that the "three strikes" provision "does not block a prisoner's access to the federal courts.  It only denies the prisoner the privilege of filing before he has acquired the necessary filing fee."[9]  *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 314 (3d Cir. 2001) (en banc). So, too, with non-prisoner litigants, who are better positioned to access the services of counsel or legal aid services if they have a meritorious claim to pursue and are unable to prepay the fees.

Furthermore, the Seventh Circuit has offered a valid critique of the approach that allows abusive litigants to continue filing under the guise of seeking permission from the court:

> Often in such situations [with abusive litigants]—and they are distressingly common—courts enjoin the frivolous litigant from filing any paper with the court or its personnel without express prior authorization by a judge of the court.  The problem with that response is that it places on the court, specifically the designated judge, the burden of reading the litigant's requests for authorization to file.  It allows the barrage to continue, just with different labels on the filings and perhaps with fewer judges having to read the filings.

*Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995) (internal citation omitted).  The Seventh Circuit suggested "[a] response less burdensome to the judiciary" which, in that case, took the form of a direction to "the clerks of all federal courts in the circuit to return unfiled any papers that the litigant [in question] attempt[ed] to file, unless and until he [paid certain] sanctions that [had] been imposed against him" with the exception of criminal and *habeas*

---

[9] That the plaintiff in *Abdul-Akbar v. McKelvie* was the same litigant in *Abdul-Akbar v. Watson* who was permitted to file new cases if he sought leave of court suggests that the *Green* approach was insufficient to deter this litigant from filing new cases and burdening the courts.

cases.[10]  *Id.*   Viewing the current legal landscape, the Court concludes that the approach taken by *Green* and endorsed by the Third Circuit, while permissible, is not required.  The Court also concludes that the modern approach supports use of an prospective injunction to limit *in forma pauperis* filings by litigants who have a demonstrated record of abusing the *in forma pauperis* privilege, provided the litigant is first given notice and an opportunity to respond to the proposed injunction.

Because of Elansari's demonstrated record of abusing the *in forma pauperis* privilege and the lack of a limiting feature that otherwise captures his recreational litigation activity in this Court, the Court will direct Elansari to show cause why he should not be subjected to an injunction in this Court preventing him from filing any new civil, non-*habeas* cases on an *in forma pauperis* basis, unless:  (1) he does so through counsel; (2) he becomes incarcerated and he files a lawsuit challenging the conditions of his confinement; or (3) he seeks review of a final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g), denying him social security benefits.  In other words, to proceed with a new civil action, Elansari would be required to either pay the fees in full up front or he would be required to file through counsel, unless:  (1) he were filing a petition for a writ of *habeas corpus*; (2) he became incarcerated and filed a lawsuit challenging the conditions of his confinement; or (3) he sought review from a decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g), denying him social security benefits.  The injunction also would not apply to criminal cases.

The Court has exempted certain categories of litigation from this prospective prohibition on proceeding *in forma pauperis* in an effort to narrowly-tailor the proposed injunction, as best

---

[10] The abusive litigant in *Mack* was not proceeding *in forma pauperis*, but had engaged in other abusive behavior for which he was sanctioned.

possible, to address Elansari's problematic litigation activity without being overbroad.  The Court would not apply this injunction to *habeas* petitions, so Elansari would still be permitted to challenge the constitutionality of his present or future convictions or imprisonment.  The Court also would not apply this injunction to cases Elansari might file were he to be imprisoned that challenge his conditions of confinement.  Although he is not currently incarcerated, the Court leaves this subset of cases open to Elansari, with the observation that, were he to file frivolous litigation in that context, he might find himself unable to proceed *in forma pauperis* because of 28 U.S.C. § 1915(g).  The Court also would not apply this injunction to cases Elansari might file if he were to apply for, and be denied, social security benefits, as this is a narrow subset of cases that does not fall within the range of civil litigation Elansari has pursued, and is limited to cases against the Commissioner of Social Security.  Elansari would also be able to proceed *in forma pauperis* if he proceeded through counsel, who would of course be subject to sanctions if counsel pursued frivolous litigation on Elansari's behalf.  Of course, if Elansari continued to engage in abusive filing activity in those additional contexts, this injunction could be expanded as necessary.

The Court also recognizes the possibility that Elansari will change his abusive filing behavior in the future.  Therefore, the Court's proposed injunction will permit Elansari to file with this Court, no earlier than three years from the date of the proposed injunction order, one motion to modify or rescind the injunction order.  Elansari's litigious behavior in this Court began approximately two-and-a-half years ago, but the public record suggest it goes back longer.  Three years is both a sufficient cooling off period for Elansari to reconsider his approach to litigation, and proportional to Elansari's multi-year pattern of conduct.  Elansari will only be

given one opportunity to make his case for vacating or modifying the injunction, should the Court impose one. *Mack*, 45 F.3d at 186 ("Perpetual orders are generally a mistake.").

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Elansari leave to proceed *in forma pauperis* and dismiss his Complaint as legally frivolous with prejudice because amendment would be futile.  Elansari will be directed to show cause within seven (7) days why an injunction should not issue against him prohibiting him from proceeding *in forma pauperis* subject to the exceptions described above.  An appropriate Order follows.

                                                    **BY THE COURT:**


                                                    **/s/Joel H. Slomsky, J.**
                                                    **JOEL H. SLOMSKY, J.**